Theodore L. BROWN, Petitioner,

v.

Barbara CHASE, Superintendent, Woodstock Correctional Center, Woodstock, Vermont, Cornelius Hogan, Commissioner of Corrections, State of Vermont, and Vermont District Court, Unit # 6, Windham Circuit, Respondents.

Civ. A. No. 78–273.

United States District Court,
D. Vermont.

Dec. 29, 1978.

Steve Dunham, Office of Defender General, Montpelier, Vt., for petitioner.

John A. Rocray, Windham County State's Atty., Brattleboro, Vt., for respondents.

HOLDEN, Chief Judge.

## MEMORANDUM OF DECISION

The petitioner's pretrial release was revoked for violation of a condition of release imposed by the Vermont District Court, Unit # 6, Windham Circuit. The condition was that the petitioner:

> not be the subject of a new charge of a felony or a crime against a person or a like offense to the offense charged for

which, after hearing, probable cause is found.[1]

The requirement was one of several imposed as a condition of pretrial release.[2] The petitioner is presently confined in the Woodstock Correctional Facility pursuant to the court order revoking bail.[3]

The petitioner appealed his bail revocation to the Vermont Supreme Court and a single Justice of that Court affirmed the lower court's order.[4] The petitioner now seeks relief in this court under 28 U.S.C. § 2254, asking that he be released from confinement pending his trial. Oral argument on this application was held on December 6, 1978.

Petitioner argues here, as he did to the Vermont Supreme Court, that the condition imposed was unconstitutional and, further, even if it were proper, that the manner in which he was found to have violated it transgressed his rights to due process of law. More fully, the petitioner claims that bail revocation proceedings constitute a deprivation of liberty within the teaching of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and that the same opportunities to be heard and to contest are required at bail revocation as *Morrissey* and *Scarpelli* mandated for the revocation of parole and probation.

Both arguments raise substantial questions. However, upon examination of the record of the state court proceedings, the court concludes that the application for habeas corpus relief must be denied.

---

1. "Conditions of Release Order" dated October 2, 1978. The parties have agreed to submit this case on the record of the state court proceedings.

2. The other conditions were: "The defendant shall personally appear in court as required by notice to defendant or defendant's attorney, or be in violation of this order . . . . Defendant shall not purchase, possess, or consume any alcoholic beverages, or non-prescribed regulated drugs. Defendant shall not purchase, possess, or use any firearms. The defendant shall not hunt or fish." Except for the last

condition, all of the conditions were standard conditions, checked off by the presiding judge on a printed sheet.

3. *State v. Brown*, Vermont District Court, Windham Circuit, Unit # 6, Docket Nos. 1749–78Cr and 1750–78Cr, "Findings, Conclusions and Order" of Vermont District Judge George F. Ellison.

4. *State v. Brown*, Vt., 396 A.2d 134 (1978).

## I. Conditions of Release

■ The petitioner's first argument is that the condition he was found to have violated does not meet the requirements of *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). In particular, the claim is that the condition was designed to protect the community against dangers presented by the petitioner's behavior, not merely to assure his presence at trial. The trial judge's written findings and conclusions on the State's motion to show cause why the defendant should not be found in violation of the conditions of his release lend some support to this theory.[5] But it cannot be gainsaid that breach of the condition at issue here would be probative of increased danger of failure to appear at trial. As Justice Billings of the Vermont Supreme Court explained:

> There are a number of reasons why the breach of a condition imposed for other reasons might bear convincingly on the issue of an accused's likelihood of returning to face trial. The multiplication of charges against the accused and the mounting of evidence against him might make a defendant's appearance less likely. The violations charged upon probable cause might well be probative of a lack of regard for the statutes of the state or the orders of the court.[6]

Since the condition imposed was relevant "to the purpose of assuring the presence of [the] defendant" at trial, it squares with the constitutional standards referred to in *Stack v. Boyle, supra,* 342 U.S. at 6, 72 S.Ct. at 4.

## II. Revocation of Release

[2] It is now fundamental that one who suffers a "grievous loss" of a "liberty" or a "property" at the hands of the government is entitled to the procedural protections of the Fifth and Fourteenth Amendments. *See, e. g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The Supreme Court's decision in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) determined that revocation of parole constituted the "grievous loss" of a "liberty." The Court explained that the parolee:

> . . . can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise

---

5. The first of District Judge Ellison's "Findings" was:

> 1. The defendant was before the Court on October 2, 1978, on the felony charges of receiving stolen property and possession of marijuana, and a misdemeanor charge of possession of an illegal deer. Based on the defendant's criminal record including six convictions, one of which was the felony of aggravated assault and two of which involved Fish & Game offenses, the Court found that the defendant was a danger to be at large and he was released on non-monetary conditions of release, No. 3 of which stated "Defendant shall not be the subject of a new charge of a felony or a crime against a person or a like offense to the offense charged for which, after hearing, probable cause is found."

In his "Conclusions" Judge Ellison stated:

> Based on the preceding Findings, the Court concludes it can release a person on nonmonetary conditions of release where the judicial officer determines that the release of the de-

fendant will constitute a danger to the public. (Citations omitted.)

6. As additional grounds for finding that this violation would make the petitioner less likely to appear at trial, Justice Billings noted:

> The record before the judicial officer disclosed that the defendant had pending against him four felonies and two misdemeanors carrying a total possible prison term in excess of thirty-five years, that he had been convicted of six criminal offenses in Vermont, including the felony of aggravated assault, that he had been convicted of a felony sale of drugs, escape from a county jail, and escape from the custody of an officer in New Hampshire, and that he had failed to appear for motor vehicle violations in Vermont on five different occasions since October 2, 1972. Given these circumstances, we find no error in the judicial officer's revocation of bail upon a finding that the defendant had violated his condition of release.

that parole will be revoked only if he fails to live up to the parole conditions.

408 U.S. at 482, 92 S.Ct. at 2600–01. (Citations omitted.) The Court concluded:

> We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others.

*Id.*

At the next term, the Court held:

> Probation revocation, like parole revocation, is not a stage of criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey v. Brewer, supra.*

*Gagnon v. Scarpelli, supra,* 411 U.S. at 782, 93 S.Ct. at 1759–60.

The person on pretrial release has the same employment opportunities and family contacts as does the parolee. The person on pretrial release has additional interests, not shared by the parolee:

> This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction.

*Stack v. Boyle, supra,* 342 U.S. at 4, 72 S.Ct. at 3 (1951). For these reasons the court finds that persons on pretrial release suffer a "grievous loss" of "liberty" when their release is revoked. Under *Morrissey* and *Scarpelli,* therefore, some sort of an adversary hearing is required before this liberty can be terminated.

■ The petitioner contends that no adversary hearing at all was afforded him; that he was entitled to procedural safeguards stated in *Morrissey.*[7] The record does not bear out this aspect of his claim. It demonstrates that the petitioner was present, with counsel, at the hearing before the Vermont District Court, which resulted in the termination of his pretrial release. The record of the hearing indicates that petitioner's counsel urged that the revocation hearing would not satisfy due process, citing the Vermont Supreme Court's recent decision in *State v. Knight,* 135 Vt. 453, 380 A.2d 61 (1977).[8] The trial judge clarified the situation by stating:

> The *Knight* case we are of the opinion that we satisfied the conditions for— we're not revoking him we're not finding him in violation of his release ex parte [sic]. *This hearing is an opportunity to be heard* relative to probable cause. No one has asked to be heard relative to probable cause here so we feel that that has been satisfied on both scores. [Emphasis added].[9]

The trial judge explained that the instant hearing was the petitioner's opportunity to contest the charge that he had violated the condition which enjoined that he commit no offense for which, after hearing, probable cause might be found.

The petitioner's counsel did not object to this statement. Nor did he make any refer-

---

7. The protections ordered in *Morrissey* involved two stages of hearings. The second hearing contains the most procedural safeguards, which the Court listed:
   (a) written notice of the claimed violations of parole;
   (b) disclosure to the parolee of evidence against him;
   (c) opportunity to be heard in person and to present *witnesses and documentary evidence;*
   (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
   (e) a "neutral and detached" hearing body such as a traditional parole board, mem-

bers of which need not be judicial officers or lawyers; and
   (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
   408 U.S. at 489, 92 S.Ct. at 2604.

8. The nature of the release condition, quoted above, mistakenly led counsel to believe that the only judicial determination the petitioner would receive was the determination of probable cause that led to his second arrest.

9. Transcript of Hearing on Bail Review and Hearing on Violation of Conditions of Release, October 19, 1978, page 16.

ence to federal constitutional standards, nor request that the hearing be continued so that witnesses could be called.[10] If there was any shortage in the standards prescribed in *Morrissey*, the petitioner's counsel failed to bring the deficiency to the trial court's attention.[11] It seems from the transcript that petitioner's counsel appeared at the hearing under the wrong impression that the merits of the revocation would not be open to arguments. However, the judge informed him to the contrary, that the hearing was for that very purpose. There was no request that the officer who submitted the affidavits on probable cause be present for confrontation and cross-examination and the petitioner offered no evidence to rebut the facts submitted to the trial judge.[12]

If the hearing did fall short of due process standards, the court was not made aware of any claim to this effect. Justice Billings refused to consider the due process argument for this reason. In consequence, no state tribunal has been given an opportunity to rule on this claim.

Section 2254 requires this court to stay its hand if a state remedy is still "available." 28 U.S.C. § 2254(c). If a renewed application for bail is not possible, a petition for state habeas corpus should be attempted. 12 V.S.A. §§ 3951–3985. If and when the petitioner attempts to raise this issue in the state courts and is rejected, this court would be in a better position to review this claim.

The petition for habeas corpus is DENIED.

---

10. The only evidence before the trial judge was the affidavits that led to the petitioner's second arrest. These affidavits indicated that the petitioner had received or aided in the concealment of stolen property during the period after his first arrest.

11. Thus the court need not decide the final question presented in procedural due process cases: How much "process" is "due"? That is,

need all of the procedures listed in *Morrissey* be followed at bail revocation?

12. It appears that under federal law the *ex parte* temporary revocation of bail for violation of conditions of release is constitutional when followed by notice and a hearing after the accused has been brought into custody. *See United States v. Bowdach*, 561 F.2d 1160, 1166–68 (5th C.A. 1977).